HYDR-O-MATIC PUMP DIVISION, WEIL-McLAIN COMPANY, INC
v G & M UNDERGROUND CONTRACTING COMPANY, INC

Docket No. 49118. Submitted June 25, 1980, at Detroit.—Decided
November 4, 1980.

Plaintiff, Hydr-O-Matic Pump Division of Weil-McLain Company,
Inc., contracted with defendants G & M Underground Contract-
ing Company, Inc., and Allied Aggregate Transportation Com-
pany, Inc. (the contractors) to build and start up two lift
stations to be used as part of a sewer project. Plaintiff sued the
contractors and American Casualty Company, the contractors'
surety, in the Macomb Circuit Court, alleging its performance
of the contract and nonpayment by the defendants. Defendants
answered, admitting the contract, denying timely delivery and
acceptance, and asserting certain affirmative defenses. Prior to
trial, written interrogatories were propounded by the plaintiff
and answered by the defendants. At trial, plaintiff, in its
opening statement, referred to the complaint, the answers and
the answers to interrogatories, argued that its case had been
admitted and that the burden was on defendants to go forward
with proof of its affirmative defenses and rested. Defendants
rested, and plaintiff moved for summary judgment, which the
court, Howard R. Carroll, J., granted. Defendants appeal. *Held:*

Written interrogatories and their answers are not part of the
evidentiary record which may be considered in deciding a
motion for summary judgment unless they have been formally
offered and admitted into evidence. The court erred in consider-
ing them in granting summary judgment.

Reversed and remanded.

PLEADING — DISCOVERY — WRITTEN INTERROGATORIES — SUMMARY
JUDGMENT — COURT RULES.

Written interrogatories and their answers are not part of the
evidentiary record which may be considered in deciding a
motion for summary judgment unless they have been formally

REFERENCES FOR POINTS IN HEADNOTE
[1] 23 Am Jur 2d, Depositions and Discovery § 292.
   73 Am Jur 2d, Summary Judgment §§ 16, 18, 22.

offered and admitted into evidence; written interrogatories and their answers are not pleadings (GCR 1963, 110.1, 117, 604).

*Glime, Daoust, Wilds, Rusing & Widlak* (by *Raymond G. Glime* and *Charles E. Turnbull),* for plaintiff.

*Doyle, Carruthers, Hess & Ralls, P.C.* (by *T. Michael Doyle* and *James D. Bruno),* for defendants.

Before: J. H. GILLIS, P.J., and V. J. BRENNAN and A. C. MILLER,* JJ.

J. H. GILLIS, P.J. Defendants, G & M Underground Contracting Company, Inc., Allied Aggregate Transportation Company, Inc., and American Casualty Company, appeal from the trial court's entry of judgment in plaintiff's favor in the amount of $90,000. This sum represents the total purchase price for two lift stations manufactured by plaintiff pursuant to a contract between plaintiff and defendants G & M and Allied. American Casualty Company is the statutory surety required by MCL 129.201; MSA 5.2321(1).

Defendants raise two issues on appeal. They first assert that the trial court erred in granting plaintiff's motion for summary judgment. The second claimed error resulted from the trial court's failure to order the defendants to submit their proofs prior to plaintiff's presentation, pursuant to GCR 1963, 507.2. Plaintiff presents a counterstated issue: whether the trial court properly entered judgment in favor of plaintiff after defendants rested without introducing any evidence of their alleged affirmative defenses. In order to resolve the conflict presented by this case, it is necessary to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

review in some detail the pleadings and discovery filed in this case.

On August 15, 1978, plaintiff filed a two-count complaint in Macomb County Circuit Court. The complaint alleged in pertinent part as follows in Count I:

"3. That on June 2, 1976, Defendant, General Contractors, entered into the contract with Washington Township of Macomb County, Michigan whereby Defendant, General Contractors, were to construct an interceptor sewer system in Washington Township.

"4. That on or about February 13, 1976, Plaintiff and Defendant, General Contractors, entered into a contract by which Plaintiff, subcontractor, agreed to build for Defendant as General Contractors, two lift stations; Plaintiff further agreed as part of said contract to start up the operation of said lift stations as part of the interceptor sewer system being constructed by Defendant, General Contractors, pursuant to Defendant, General Contractors' contract with Washington Township.

"5. That the agreed upon price between Plaintiff and Defendant, General Contractors, for the manufacture, delivery and starting up of the lift stations was $90,000.

"6. That Plaintiff delivered the lift stations to Defendant, General Contractors, on or about November 27, 1977, in accordance with said contract.

"7. That Defendant, General Contractors, accepted the lift stations delivered on the above date, they incorporated the lift stations in the construction job being performed pursuant to their contract with Washington Township.

"8. That Defendant, General Contractors, have continually refused to pay Plaintiff for work performed or any costs incurred with regard thereto even after repeated requests regarding same from the Plaintiff; that such refusal on the part of Defendant, General Contractors, constitutes a breach of their contract with the Plaintiff.

"9. That Plaintiff stands ready, willing and able to perform any remaining work pursuant to its contract

with Defendant, General Contractors, but that Defendant, General Contractors' failure and refusal to pay for the goods already delivered and accepted by them places said Defendant, General Contractors, in breach and renders Plaintiff justly apprehensive that any payment will be forthcoming."

Count II was directed at American Casualty's obligation as surety. It is not directly at issue on appeal and will not be referred to again.

Defendants' answer was timely filed on September 5, 1978, and contained the following responses to the above-quoted paragraphs from plaintiff's complaint:

"3. Answering Paragraph 3, Defendants admit same.

"4. Answering Paragraph 4, Defendants admit same.

"5. Answering Paragraph 5, Defendants admit same.

"6. Answering Paragraph 6, Defendants deny that delivery was made in accordance with the contract.

"7. Answering Paragraph 7, Defendants deny same as untrue.

"8. Answering Paragraph 8, Defendants admit the allegation with respect to refusal to pay. Further answering said paragraph 8, Defendants deny that the work was performed, and therefore Defendants have refused to pay for same.

"9. Answering Paragraph 9, Defendants are without sufficient information upon which to base an answer for the reason Plaintiff has refused to perform its contract with Defendants, and leave Plaintiff to its proofs."

Defendants also set forth the following as affirmative defenses:

"1. Defendants incorporate herein their Answers to Counts I and II of Plaintiff's Complaint.

"2. Plaintiff failed to make timely delivery.

"3. Defendant contractors had to spend substantial

transportation costs as a result of failure to Plaintiff to make timely delivery.

"4. The products furnished by Plaintiff failed to meet contract specifications.

"5. Plaintiff has refused to complete its obligation under the contract.

"6. Defendants reserve the right to allege such other and further Affirmative Defenses as may come to its knowledge during the pendency of this action."

Subsequently, interrogatories were propounded by plaintiff and answered by defendants. The most pertinent part of plaintiff's questions and defendant's answers reads as follows:

"5. Please give the date on which the lift stations referred to in paragraphs 4 through 7 of Plaintiff's Complaint were delivered to Defendant."

"5. Duplex Jewell Chadwick delivered 12/5/77, shipped 11/30/77. Triplex Hayes-26 mile delivered 10/31/77, shipped 10/28/77."

"6. Please state where such lift stations were delivered to and/or accepted by Defendant, where such lift stations were installed by Defendant, and, if such lift stations were stored for a significant period of time in the interim between delivery and installation, please state where and in what manner such lift stations were stored."

"6. A. Both stations delivered to 30665 Groesbeck, Roseville, MI. .

"B. Duplex station was installed at Jewell and Chadwick, Washington Township, Macomb County, Michigan.

"C. Triplex station was installed at 26 Mile West of Hayes, Washington Township, Macomb County, Michigan.

"D. Both stations stored for approximately 5 months.

"E. Both stations stored at 30665 Groesbeck, Roseville, MI in manner commensurate with manufacturer's instructions."

"11. Please state in detail the manner in which

delivery of the lift stations by Plaintiff failed to comply with the contract between Plaintiff and Defendant, if indeed the delivery failed to so comply."

"11. * * * Plaintiffs' Quotations S-12975-Z dated December 9, 1976. Estimated delivery of 20-24 weeks which would have scheduled availability on or about June 15, 1976. Defendant relied on this information when defendant bid the project and defendant relied on promised availability in planning and scheduling dewatering of the project. Non-availability of stations caused defendant to incur costs not planned on. Pump stations were not ready for delivery until October and December, 1977."

"12. Please state in detail the manner in which the lift stations delivered by Plaintiff failed to meet the specifications of the contract, if indeed the lift stations failed to meet such specifications."

"12. Refer to answer to Paragraph 11 above. Further, pump stations were defective and/or did not meet specifications. Defendant had to hire Detroit Elevator Co. and Lift Station Service Co. and use own men, materials, equipment, etc. to render stations in compliance with contract specifications."

"13. Please state in detail in what manner Plaintiff has refused to complete its obligations under the contract between Plaintiff and Defendant, if indeed Plaintiff has failed to meet such obligations."

"13. Plaintiff failed to provide timely delivery as promised and failed to deliver equipment in accordance with specifications."

A bench trial was held on July 10, 1979. As soon as the case was called, defense counsel moved for a two-week adjournment, "based upon a last minute deposition taken by the Plaintiffs [sic] on Friday, July 6th". Plaintiff objected to the motion because the transcript of the deposition had been available to defendants the day before, and because defendants had been granted an eight-day adjournment of the deposition from the originally scheduled date. The trial judge denied the motion on the

basis that, in the five weeks since the trial date was set, defense counsel had never even intimated that he would not be prepared to proceed on July 10, 1979.

Plaintiff's attorney then made his opening statement, during which he briefly summarized the facts of the case, and then stated in pertinent part as follows:

"*[Mr. Turnbull* (plaintiff's counsel)]: The pleadings on file with the Court, the answers of the complaint, *interrogatories and answers thereto,* outline the essential elements of this contract. For that reason, my opening statement will be quite brief because of the [fact that the] essential elements of the contract are admitted by the Defendants. I would make reference at this point to paragraph four of the Plaintiff's complaint, which alleges that on or about—

"*Mr. Doyle* [defendants' counsel]: May it please the Court, we object to this form of opening statement as being argumentative.

"*Mr. Turnbull:* My opening statement is based upon Michigan General Court Rule 604, which states any facts which are admitted in pleadings need not be pro[ved] in Court, and we are trying to arrange our proofs and tell you we are going to arrange our proofs by way of this opening statement, in order not to waste the Court's time with unnecessary testimony or other documentations.

"*The Court:* You may proceed.

"*Mr. Turnbull:* [After noting that defendants admitted the allegations in ¶¶ 4 and 5 of the complaint.] Throughout *[sic]* the rest of Plaintiff's complaint, the Defendant *[sic]* sets various affirmative defenses and he *[sic]* also lists affirmative defenses at the end of his *[sic]* answers, defenses going basically to time and delivery on the contract. Defendant *[sic]* alleges whoever *[sic]* it was was not timely or not to the right place, and certain elements of the subject matter of the contract did not meet the specifications. Defendant *[sic]* does admit in the pleadings *and in the interrogatories* th[e]

delivery of the pump station[s] * * * which are the subject matter of the contract.

"It thus appears from the pleadings [that] this is a case that Plaintiff is inserting *[sic]* a case of substantial performance under the contract. Defendant *[sic]*, rather than seeking to deny the contract, sets up various affirmative defenses upon which it *[sic]* predicates its unwillingness to pay pursuant to the terms of the contract.

* * *

"[As] Plaintiff's case in chief, Plaintiff is prepared to show to the Court that substantial performance has been tendered on this contract. In fact, Plaintiff will assert to the Court that Defendant *[sic]* has admitted Plaintiff's compliance with the essential terms of the contract and is now asserting affirmative defenses to the contract. Plaintiff, pursuant to GCR 604 would then state to the Court that it's the Defendant's *[sic]* burden to go forward * * * in accordance with 604 in this case and support its *[sic]* affirmative defenses by representing his *[sic]* own case in chief at this time.

"Any questions, your Honor?

*"The Court:* No, but I assume he will.

*"Mr. Turnbull:* Based on my opening statement *we would like to rest* and reserve the right to rebuttal of Defendant's contemplated opening statement.

*"Mr. Doyle: We rest,* your Honor.

*"Mr. Turnbull:* Your Honor, at this time, Plaintiff would like to make a motion for summary judgment based on the pleadings filed in this matter.

*"Mr. Doyle:* We would request the Court to allow us to submit briefs based upon the fact that we have denied delivery in our answer.

*"Mr. Turnbull:* Delivery cannot be denied, your Honor, *interrogatories—*

*"Mr. Doyle:* We have denied it.

*"The Court:* I'll take your briefs.

* * *

*"Mr. Doyle:* May it please the Court, may we have a more specific definition as to what the motion for summary judgment was based on? I believe it was based on

the fact that they said we have admitted specific *[sic]* substantial performance. That is the way I understand it.

"*Mr. Turnbull:* Based upon my opening statement that was the basis of the summary judgment.

"*The Court:* I think as long as he asked that you clarify, you better clarify it. No point in the two of you doing a lot of briefs and all of a sudden finding out one side was talking about apples and the other side was talking about oranges.

"*Mr. Turnbull:* I would suggest to counsel that he review the record, then.

"*Mr. Doyle:* Okay, your Honor. Thank you." (Emphasis supplied.)

The brief submitted to the trial court by plaintiff asserted that defendants' assertion of late delivery as an affirmative defense constituted an admission that delivery had occurred under a contract between the parties. Because defendants rested without putting in any proofs in support of their affirmative defenses, plaintiff claimed that judgment in its favor was required. Defendants responded by arguing the narrow issue whether plaintiff should be granted *summary* judgment under GCR 1963, 117. Finding that none of the three grounds on which summary judgment may be based could apply in the instant case, defendants argued that their denial of delivery *in accordance with the contract* was sufficient to overcome plaintiff's motion.

Although plaintiff had orally referred the trial court to defendants' answers to the interrogatories, during its opening statement, no explicit reference was made to those answers in plaintiff's brief. A citation in support of plaintiff's argument did refer to the answers to the interrogatories, however, and plaintiff's subsequent reply brief clearly stated plaintiff's reliance on admissions

made in the answers to the interrogatories. Defendants' brief addressed the use of interrogatories in the context of a motion for summary judgment under GCR 1963, 117.2; defendants' reply brief did not discuss the issue at all.

On November 30, 1979, the trial court issued a written opinion granting judgment in favor of plaintiff. The opinion opened with a statement of facts which could only have been gleaned from the pleadings and the answers to the interrogatories. For instance, the court noted that the lift stations were delivered to defendants and "were incorporated by the defendants into the sewer system construction". In defendants' answer to the complaint, defendants denied that they had accepted the lift stations and incorporated them into the sewer system. In paragraph 6 of the answers to the interrogatories, however, defendants stated that the stations were delivered and installed in the construction. Thus, the trial court clearly relied on more than the complaint and answer to resolve plaintiff's motion.

The trial court considered the effect of defendants' decision to rest without making an opening statement or putting in any proofs. It ruled that such tactic "force[d] the Court to make a judgment on the pleadings and plaintiff's statement". Citing *Obremski v Dworzanin,* 313 Mich 495, 500; 21 NW2d 828 (1946), the court noted that judgments are rarely granted after a plaintiff's opening statement, but held that judgment may be rendered under such circumstances if there are no questions of fact requiring trial on the merits. The court then made the following findings: (1) the contract was composed of several letters exchanged by the parties between December 9, 1975, and May 19, 1976, none of which contained a specific delivery

date; (2) plaintiff claimed substantial performance and defendants admitted in their pleadings and answers to the interrogatories that delivery was made; (3) defendants' unwillingness to support with proofs their pleaded affirmative defenses evidenced that the defenses were without merit; and (4) there were no questions of fact other than those raised by the plaintiff and admitted by the defendants in the pleadings. Finally, the court noted that plaintiff's request for a summary judgment was not technically correct because the nature of plaintiff's statement reflected his intent merely to request a judgment on the pleadings. Judgment was entered on December 10, 1979.

As noted above, defendants' second issue on appeal is premised on GCR 1963, 507.2. That rule provides as follows:

"Unless otherwise ordered by the court, the plaintiff shall first present the evidence in support of his case. When in any action, the defendant in his answer admits all facts and allegations of the plaintiff's complaint to the extent that in the absence of further statement on his behalf judgment should be entered on the pleading for the plaintiff, and defendant asserts a defense on which he has the burden of proof either as a counterclaim or an affirmative defense, the defendant shall first present the evidence in support of his case."

Defendants argue that, if the pleadings truly justified a judgment in plaintiff's favor, the trial court was under a duty to instruct defendants that they were required to "first present evidence in support of [their] case".

As plaintiff notes, defendants never raised this issue below, despite the fact that they filed a lengthy brief on the question whether plaintiff should be awarded judgment after the abbreviated "trial". Further, immediately after plaintiff rested,

defendants were given an opportunity to present their case. The decision to rest without submitting one iota of evidence was apparently a strategic move which can in no way be charged to the trial court. Further discussion is unnecessary.

As to the merits of the judgment granted by the trial court, several comments are in order. The lower court file of relevant documents filed by the parties *before* trial consists of the complaint, the answer, the interrogatories propounded by plaintiff, the answers to plaintiff's interrogatories, and a transcript of the deposition of the president of G & M Underground Contracting.[1]

On appeal, defendants argue that, if judgment *on the pleadings* was made, plaintiff still did not establish a prima facie case, because answers to interrogatories are not pleadings. Before determining whether defendants' argument has merit, it is important to sort out exactly what happened at the trial. Admittedly, plaintiff's opening statement was referenced to GCR 1963, 604, which provides that:

"Any statement of fact set forth in any pleadings shall be treated as an admission by the pleader and need not be proved by the opposite party."

GCR 1963, 110.1, states that:

"There shall be a complaint; an answer; a reply to an answer demanding a reply and to a counterclaim denominated as such; an answer to a cross-claim if the answer contains a cross-claim; a third-party complaint if a person who was not an original party is summoned under Rule 204; and a third-party answer if a third-party complaint is served. No other pleading shall be

[1] The deposition was not referred to in plaintiff's opening statement nor does it appear to have been considered by the trial court, given the unbroken seal on the envelope in which it was filed.

allowed except that a reply may be made to an answer or a third-party answer.

A reading of the foregoing court rule reveals that the complaint and the answer are pleadings on which plaintiff could rely for proof of certain elements of its claim.

The plaintiff, and the trial court, also relied on defendants' answers to plaintiff's interrogatories to establish plaintiff's case. GCR 1963, 309.4 permits the use of answers to interrogatories "to the same extent as provided in subrule 302.4 for the use of a deposition of a party". GCR 1963, 302.4 permits an adverse party to use any part or all of a party's deposition for any purpose, "so far as admissible under the rules of evidence". This latter phrase implies that such answers must be offered and admitted into evidence before being considered part of a party's proofs. While there are no Michigan cases on point, cases in other jurisdictions offer some instruction on the issue.

In *Coca Cola Bottling Co v Clark,* 299 So 2d 78 (Fla App, 1974), Coca Cola appealed the trial court's refusal to grant a directed verdict in its favor. One of the grounds urged by the appellee in support of the denial of the motion was that appellant had admitted an essential element of the claim in its answers to interrogatories and requests for admissions. The appellate court rejected this argument as follows:

"[W]e have carefully read the entire transcript of the trial proceedings and fail to there find any reference to interrogatories or requests for admissions.

"It is elementary that a jury is entitled to consider only such evidence as is properly adduced during the trial. Matters dehors the record may not properly be considered. The issues to be resolved by the trier of

facts are determined by the complaint and answer (including any amendments thereto).

\* \* \*

"The issues, however, must be resolved by the trier of facts in accordance with the evidence, or stipulations. Pretrial discovery, including depositions, written interrogatories and answers thereto, requests for admissions and answers thereto, do not become a part of the evidence to be considered in resolving the trial issues unless properly offered and received into evidence. The mere act of filing a document or other tangible item in the file of the cause does not thereby render it a part of the evidence to be considered by the trier of facts.

"An appellate court, reviewing a post-trial judgment (as distinguished from a pretrial judgment, such as a summary judgment, judgment on the pleadings or judgment of dismissal) may only consider that which was properly made a part of the trial record." 299 So 2d 78, 81-82.

As to the question whether answers to interrogatories are "pleadings", the Florida court stated:

"[A]nswers to interrogatories and requests for admissions are not 'pleading'. Pleadings are the allegations made by the parties to a suit for the purpose of presenting the issues to be tried and determined. They are the formal statements by the parties of the operative, as distinguished from the evidential, facts on which their claim or defense is based." *Id.,* 82.

See also, *Heilig v Studebaker Corp,* 347 F2d 686, 689 (CA 10, 1965), *Coca Cola Co v Dixi-Cola Labs, Inc,* 30 F Supp 275, 277 (DC Md, 1939), and *Fender v Colonial Stores, Inc,* 138 Ga App 31; 225 SE2d 691 (1976).

In each of the foregoing cases, the question whether interrogatories are pleadings arose in the context of a jury trial. Thus, although the reasoning may be analogous, the exigencies are not the

same in a case tried to the trial judge alone. In order to assure jury consideration of the substance of answers to interrogatories, such evidence must be offered and admitted into evidence. The same is necessarily true of pleadings, but pleadings do not suffer from the same vulnerability to objection under the rules of evidence.

In the instant case, defendants argue that plaintiff must have offered the answers to the interrogatories for admission into evidence before the trial court could consider them as part of the evidentiary record. Even more particularly, defendants assert that the trial court erred because it considered the answers as pleadings within the provisions of GCR 1963, 604. A review of the lower court's opinion reveals, however, that it did not incorrectly characterize the answers as pleadings.[2] Thus, it is apparent that the trial judge considered the answers to be part of the evidentiary record on which he was required to decide plaintiff's motion. This was error.

When the trial court began its consideration of the merits of plaintiff's motion, the case had gone to trial and the parties had rested. At that point, the trial court was obligated to act as trier of fact; the motion for summary judgment could not be considered. The only matters pertinent to the court's decision were the pleadings and the evidence. The trial court's consideration of answers to interrogatories not received into evidence was improper. This error requires reversal for a new trial.

Reversed and remanded for a new trial.

---

[2] The court said: "In his opening statement plaintiff concentrated on defendant's admissions and claimed that the pleadings showed that plaintiff has substantially performed under the contract. Defendants did admit *in the pleadings and in interrogatories* that the two pumping stations were delivered."